UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                                    Case No.: 11-73935-ast
                                                                             Chapter 13
HERMAN F. MILLER, JR.,


                                      Debtor.
--------------------------------------------------------X
In re:                                                                    Case No.: 11-74955-ast
                                                                             Chapter 13
JOHN A. PAULETTE, JR.,


                                      Debtor.
--------------------------------------------------------X

## MEMORANDUM OPINION
### <u>CONFIRMING DEBTORS' CHAPTER 13 PLANS</u>

### <u>Issue</u>

The issue before this Court in these chapter 13 cases of Herman F. Miller, Jr., and John

A. Paulette, Jr. (each a "Debtor" and together the "Debtors"), is whether the Court may confirm

Debtors' chapter 13 plans and strip off wholly unsecured junior mortgage liens for these Debtors,

even though they are ineligible to receive a chapter 13 discharge.  For the reasons set forth

below, the Court concludes that strip off is permissible and each plan should be confirmed.

### <u>Jurisdiction</u>

This Court has jurisdiction over these core proceedings pursuant to 28 U.S.C.

§§ 157(b)(2)(A), (K) and (L), and 1334(b), and the Standing Order of Reference in effect in the

Eastern District of New York.

## **Background**

Confirmation hearings are under submission in these pending bankruptcy cases of *In re Herman F. Miller Jr.*, case no. 11-73935-ast, and *In re John A. Paulette, Jr.*, case no. 11-74955-ast.  Pending in each, incident to confirmation of Debtors' chapter 13 plans, are each Debtor's motion seeking to strip off a wholly unsecured junior mortgage lien against each Debtor's residence, to which the holders of the mortgage debts did not object.  However, the Chapter 13 Trustee (the "Trustee") has objected to the relief sought in each case, asserting that this Court cannot allow the strip offs and the treatments provided by the plans because each of the Debtors is ineligible to receive a discharge.  In light of the significance of this issue, this Court set briefing deadlines, which have now passed.  Because the facts of each case and the legal issues are very similar, this Court has determined to issue a single opinion regarding both cases.  The facts of each case will be analyzed in turn.

*Herman F. Miller, Jr.*

Herman F. Miller, Jr., ("Miller") received a discharge under chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") on June 8, 2009. Case No. 09-71396-ast. Miller filed the above captioned voluntary petition for relief under chapter 13 of the Bankruptcy Code nearly two years later, on June 1, 2011 (the "Miller Petition"). [dkt item 1]

Along with his chapter 13 Petition, Miller filed, *inter alia*, his Schedules (the "Miller Schedules") and Statement of Financial Affairs (the "Miller SOFA").  The Schedules disclose that Miller owns real property known as 8 Singingwood Drive, Holbrook, New York 11741 (the "Miller Property").  On Schedule A, Miller has valued his home at $350,000.  The Schedules also disclose that the Miller Property serves as collateral for two different mortgage debts. According to Schedule D, the first mortgage on the Property is held by Bayview Loan on which

Miller currently owes $362,810.89; the second mortgage on the Miller property is held by Bank of America f/k/a Aegis Funding/Aegis Home Equity DLJ Mortgage Capital, Inc. (the "BOA"), on which Miller currently owes $182,727.00.

On July 6, 2011, Miller filed a motion to void the mortgage lien of BOA and to reclassify BOA's claim [Claim # 5] as an unsecured claim during the pendency of the chapter 13 plan (the "Miller Motion"). [dkt item 12]  Debtor alleges there is no equity in the property to secure a second mortgage and, accordingly, the second mortgage should be reclassified as unsecured pursuant to 11 U.S.C. § 506(a) of the Bankruptcy Code[1] and disallowed under 11 U.S.C. § 506(d) to the extent the lien secures a claim that is not an allowed secured claim.

The Court determined that a hearing on the Miller Motion was necessary even though no objections were filed.  On August 19, 2011, counsel for Miller provided notice to the parties in interest, including BOA, that a hearing on the Miller Motion was scheduled for October 4, 2011. [dkt item 17]  On September 21, 2011, the Trustee filed an Affirmation in Opposition (the "Opposition") [dkt item 18] which stated, *inter alia*, that Miller cannot utilize §§ 506(a) and (d) to void the BOA lien because Miller is not eligible for a discharge, due to Miller's previous chapter 7 discharge.  At the hearing, which BOA did not attend, Miller and the Trustee agreed that the determination of the Miller Motion is the only barrier to confirmation of Miller's chapter 13 plan.  Following the October 4 hearing, the Court decided to take the matter under submission, and requested that the parties file supplemental briefing within three weeks.  Miller then filed a brief in support on October 20, 2011.  [dkt item 19]  The Trustee filed a brief in opposition on October 25, 2011.  [dkt item 20]

---

[1]  Throughout this Memorandum Opinion, all statutory references to the Bankruptcy Code are under Title 11 of the United States Code, §§ 101-1532, unless otherwise indicated.

*John A. Paulette, Jr.*

John A. Paulette, Jr. ("Paulette") received a discharge under chapter 7 of the Bankruptcy Code on June 8, 2009.  Case No. 09-75425-dte.  Paulette filed the above chapter 13 petition nearly two years later, on June 1, 2011 (the "Paulette Petition"). [dkt item 1]

Paulette filed his Schedules (the "Paulette Schedules") and Statement of Financial Affairs (the "Paulette SOFA") along with the Paulette Petition.  According to Schedule A, Paulette has a principal residence at 151 Margin Drive, Shirley, New York 11967 (the "Paulette Property").  Paulette listed the current fair market value of the Paulette Property as $235,000.00.  Paulette has two mortgages against the Paulette Property listed on Schedule D.  The first mortgage on the Paulette Property is held by JPMorgan Chase Bank, N.A., as Servicer for U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America, N.A., as Successor by Merger to LaSalle Bank ("Chase") and the balance owed to Chase is over $256,250.  Citibank NA f/k/a Greenpoint Mortgage Funding Inc. ("Citibank") holds the junior mortgage on the Paulette Property, in the amount of $66,316.00.

On September 19, 2011 Paulette filed a motion to avoid the Citibank junior mortgage lien and reclassify the lien claim as an unsecured claim during the pendency of the chapter 13 plan (the "Paulette Motion").  [dkt item 15]  The Paulette Motion was filed on notice to Citibank and the Trustee and was scheduled to be presented to this Court on October 28, 2011.  Similar to Miller, Paulette alleges that there is no value in the Paulette Property to secure a second mortgage and, because the secured claim is only secured to the extent of the collateral's value under § 506(a), the junior mortgage lien is wholly unsecured and should be treated as such pursuant to §§ 1322(b)(1) and 1322(b)(5), and disallowed under § 506(d).  Citibank did not oppose the Paulette Motion.

On September 21, 2011, the Trustee filed a limited opposition to the Paulette Motion (the "Paulette Opposition") [dkt item 16] stating, *inter alia*, that because the issue was identical to the issues in Miller, the Court should not enter an order until the matter has been resolved in the Miller bankruptcy case.  On November 11, 2011, the Court issued an Order [dkt item 17] that allowed Paulette and the Trustee to file memorandum of law in support of their respective legal positions.  On November 17, 2011, Paulette filed a brief in support. [dkt item 17]  The Trustee then filed a brief in opposition on November 30, 2011.  [dkt item 19]

## Discussion

*Strip downs and strip offs of residential mortgage debt claims in chapter 13*

These cases present an issue made the subject of a number of conflicting court decisions concerning the interplay between various provisions of the Bankruptcy Code affecting consumer bankruptcy cases, including provisions as modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ( "BAPCPA").  Colloquially stated, the issue is whether a "chapter 20"[2] debtor may strip a completely underwater, inferior mortgage lien off the debtor's primary residence in a chapter 13 case filed less than four years after having received a chapter 7 discharge.  More formally stated, the issue is whether a debtor who has been discharged of his *in personam* liability for a home mortgage debt by receiving a chapter 7 discharge may then modify the *in rem* rights of the holder of the mortgage debt by voiding the lien through a confirmed chapter 13 plan in a case in which a chapter 13 discharge cannot be issued, and, if so, under what circumstances.  As many of the cases that have addressed this issue have done, it is helpful to set the context for the issue before embarking on this Court's analysis thereof.

---

[2]  In a "chapter 20" case, a debtor who previously received a chapter 7 discharge later files a chapter 13 case; such a debtor is ineligible to receive a chapter 13 discharge if he or she received a chapter 7 discharge "in a case filed under chapter 7 . . . during the 4-year period preceding' the filing of the chapter 13 case, pursuant to 11 U.S.C. § 1328(f)(1). *See In re Orkwis*, 457 B.R. 243, 249 (Bankr. E.D.N.Y. 2011); 8 COLLIER ON BANKRUPTCY 1328.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

First, for terminology purposes, this Court will refer to a consensual mortgage lien that is not supported by any value in the collateral as "wholly unsecured," terminology which many courts use. By virtue of § 506(a), a lien may be wholly unsecured if debts secured by liens with priority over the subject lien exceed the value of the collateral. Section 506(a) provides, *inter alia*, that a claim may be a secured claim if there is a lien against property of the estate, but is a secured claim only to "the extent of the value of the secured creditor's interest in the estate's interest in such property."  11 U.S.C. § 506(a).

Second, courts have uniformly drawn a distinction between "stripping down" a secured creditor's mortgage debt claim and "stripping off" a secured creditor's lien.  Stripping down has been identified as the process of bifurcating a secured creditor's claim into a secured claim to the extent of the fair market value of the real property available to secure the particular lien position, and an unsecured claim for the remaining balance.  Stripping off, on the other hand, is the avoidance of a wholly unsecured mortgage lien.

Third, case law has developed in the chapter 13 context that a chapter 13 debtor may avoid or strip off a wholly unsecured mortgage lien against the debtor's principal residence, but may not strip down a mortgage claim to the secured value thereof and thereby bifurcate the claim into secured and unsecured claims. The reason for the different treatment of strip offs versus strip downs in chapter 13 will require a historical analysis of the provisions of chapter 13 and the subsequent case law.  This case law has, however, also generated discussion of when does a strip off take effect in a chapter 13 case, and are there limitations of whether certain chapter 13 debtors, those ineligible to obtain a discharge, may utilize lien strip off.

*Statutory and case law developments*

Under the Bankruptcy Code as first enacted in 1978, an individual or married couple with regular income could seek bankruptcy relief under chapter 13, often called the wage earner's provision; such wage earners, however, could not owe secured or unsecured debts that exceed certain limits, or they would be ineligible for chapter 13 relief.  *See* 11 U.S.C. § 109(e).  Through chapter 13, Congress sought to strike a balance between a consumer's need for bankruptcy protection and the rights of creditors to receive payments on their claims from those who could afford to make at least some payments, and to create a balance between homeowners and mortgage lenders.[3] In addition, chapter 13 provides the debtor benefits not available in chapter 7, such as an ability to restructure certain mortgage and tax liabilities, but detriments such as making post-petition earnings property of the bankruptcy estate.[4]

As part of this balancing, Congress included in the 1978 Code certain restrictions on the ability of consumer debtors to impact the rights of holders of mortgage debts, including § 1322(b)(2),[5] which prohibits a chapter 13 debtor from modifying the rights of a holder of a

---

[3]  Ronald D. Slaven, Jr., *Short-Term, Long-Term, Junior, and Senior: A Critical Analysis of the Mortgage Provisions of § 1322(b) of the Bankruptcy Code with Reference to Historical Market Developments and Recent Financial Crises*, 19 J. BANKR. L. & PRAC.1 Art. 4 (2010) ("Chapter 13 of the Bankruptcy Code replaced Chapter XIII, a forerunner statute governing wage earner cases added to the Bankruptcy Act of 1898 by the Chandler Act in 1938. Like its predecessor, Chapter 13 was intended to give individuals an opportunity to obtain the advantages of reorganization bankruptcy. Unlike the earlier statute, however, Chapter 13 allowed a debtor to address secured claims in a debt-adjustment plan without needing the consent of secured creditors. The plan could also include debts secured by real estate, which were excluded under former Chapter XIII. These changes created the necessary room for a provision like § 1322(b)(2) that attempts to strike a balance between the interests of mortgage holders and bankrupt homeowners.").

[4]  Other general differences between chapter 7 and chapter 13 are less so in 2011 than they were in 1984, and are not discussed in this opinion.

[5]  "Subject to subsections (a) and (c) of this section, the plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claim."

11 U.S.C. § 1322(b)(2).

secured mortgage debt if the mortgage debt is secured only by a lien against the debtor's

principal residence.  This proscription, which has come to be known as the anti-modification

provision of the Bankruptcy Code, gave rise to substantial litigation over the extent to which

§ 1322(b)(2) applies.  The context of such litigation was, if a mortgage debt is partially secured

and partially unsecured, can a chapter 13 debtor write the debt down to the secured value and pay

that amount in full over time under the plan, and treat the unsecured portion as an unsecured

claim to receive a *pro rata* portion of the plan distribution general unsecured claims were to

receive.

Following a split between the circuit courts of appeals, this issue reached the United

States Supreme Court in 1993 in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993).

The Supreme Court stated the question as "whether § 1322(b)(2) prohibits a chapter 13 debtor

from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value

of the mortgage residence."  *Id.* at 325-26.  After reviewing the statutory language and applicable

precedent, the Court held that a chapter 13 debtor cannot strip down a partially unsecured

residential mortgage lien secured by the debtor's principal residence.  *Id.* at 332. The Court

concluded that, so long as there is some value in the collateral to which the lien could attach, the

entire lien was protected under §1322(b)(2).  *Id.*  In referring to § 506(a),[6] the Supreme Court

stated that "Petitioners were correct in looking to § 506(a) for a judicial valuation of the

collateral to determine the status of the bank's secured claim. It was permissible for petitioners to

seek a valuation in proposing their chapter 13 plan, since § 506(a) states that such value shall be

---

[6] Section 506(a)(1) provides, in relevant part:

> An allowed claim of a creditor secured by a lien on [the collateral] . . . is a secured claim to the
> extent of the value of such creditor's interest in the [the collateral] . . . and is an unsecured claim to
> the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)

determined . . . in conjunction with any hearing . . . on a plan affecting such creditor's interest." *Id.* at 328 (internal citations omitted).

Following *Nobelman*, several bankruptcy, district and circuit courts, as well as bankruptcy appellate panels, reached a corollary question not at issue in *Nobelman*: whether a holder of mortgage debt against a chapter 13 debtor's residence which is wholly unsecured is entitled to the protections of the anti-modification provisions of § 1322(b)(2), or whether the rights of such a mortgage holder can be modified by treating the claim as an unsecured claim in the debtor's plan. Each appellate court to reach this issue, including the Second Circuit, has determined that § 1322(b)(2) does not protect the holder of a mortgage debt which is fully unsecured, and such holder's rights may be modified in a chapter 13 plan. *See*, *e.g.*, *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *In re Pond*, 252 F.3d 122, 127 (2d Cir. 2001); *Am. Gen. Fin., Inc. v. Dickerson (In re Dickerson),* 222 F.3d 924 (11th Cir. 2000); *Tanner v. First Plus Fin., Inc. (In re Tanner),* 217 F.3d 1357 (11th Cir. 2000); *In re Bartee*, 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In re McDonald),* 205 F.3d 606 (3d Cir. 2000); *First Mariner Bank v. Johnson*; 411 B.R. 221 (D. Md. 2009), *aff'd* 407 F. App'x. 713 (4th Cir. 2011) (per curiam) (unpublished); *Suntrust Bank v. Millard (In re Millard),* 414 B.R. 73 (D. Md. 2009), *aff'd 404* F. App'x. 804 (4th Cir. 2010) (per curiam) (unpublished); *Lam v. Investors Thrift (In re Lam),* 211 B.R. 36 (B.A.P. 9th Cir. 1997).

The case most instructive for this Court is *In re Pond*, 252 F.3d 122, (2d Cir. 2001), in which the Second Circuit held that "the anti-modification exception of Section 1322(b)(2) protects a creditor's right in a mortgage lien only where the debtor's residence retains enough

value – after accounting for other encumbrances that have priority over the lien – so that the lien is at least partially secured under Section 506(a)." *Id.* at 126.

The junior mortgagee in *Pond* argued that, in spite of its collateral having no secured monetary value once superior liens were factored in, the junior lien was still "secured" under §506(a), and, therefore, protected under the anti-modification exception of § 1322(b)(2), "because New York law provides lienholders with *in rem* rights that have 'value' over and above the equity in the property underlying a lien." *Id.* at 126. The Second Circuit rejected this argument:

> This argument has been foreclosed by the Supreme Court, which has explained that "[s]ubsection (a) of § 506 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239 (1989) (emphasis added); *see also Associates Commercial Corp. v. Rash*, 520 U.S. 953, 961 (1997) ("The first sentence of §506(a), in its entirety, tells us that . . . the secured portion of [a] claim [is] limited to the value of the collateral."). Accordingly, to determine whether a lien is "secured" under Section 506(a), a court must examine the value of the collateral underlying a lien, not the value of the lien itself.

The Second Circuit went on to state:

> In the case at hand, both parties agree that the value of the residential property underlying defendants' lien is insufficient to cover any portion of the lien; as a result, defendants' lien is wholly unsecured under Section 506(a). Because their lien is wholly unsecured, defendants are not "holders of . . . a claim secured only by a security interest in . . . the debtor's principal residence," 11 U.S.C. § 1322(b)(2), and their rights in the lien are not protected under the antimodification exception of Section 1322(b)(2).

*Pond*, 252 F.3d at 126-27. Accordingly, the Second Circuit permits courts to value the residential mortgage lien under § 506(a) to ascertain the extent to which the plan may modify the rights of the creditor holding the junior mortgage; if the lien is fully unsecured, the holder's rights may be modified; if, however, there is any value to the secured portion of the claim, the entire mortgage debt must be treated as a secured claim in the chapter 13 case.

Post *Nobelman* courts interpreting § 1322(b)(2) have also have been fairly uniform in holding that a valuation under § 506(a) cannot be done in a vacuum.  Section 506(a) only allows a bankruptcy court to determine the value of certain property "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."  11 U.S.C. § 506(a).  Thus, for a debtor to obtain modification of a mortgage holder's right, as noted by Judge Grossman of this court, "Section 1322(b) specifies that the modification must take place in the plan, and requires a determination that the value of the collateral is less than the amount of the senior mortgage lien pursuant to Bankruptcy Code § 506(a)."  *In re Orkwis*, 457 B.R. 243, 248 (Bankr. E.D.N.Y. 2011).

Thus, the case law being fairly clear and consistent that a debtor may strip off a wholly unsecured residential mortgage lien under a chapter 13 plan, the question remains whether a debtor who is not eligible to receive a chapter 13 discharge may do so.  Courts deciding this question are divided.  A number of courts have held that a stripped off lien is removed only upon entry of the debtor's discharge, and, therefore, a debtor who is ineligible to receive a chapter 13 discharge cannot strip off of a fully unsecured mortgage debt. *Orkwis*, 457 B.R. at 252; *In re Lindskog*, 451 B.R. 863 (Bankr. E.D. Wis. 2011); *In re Geradin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011); *In re Erdmann*, 446 B.R. 861 (Bankr. N.D. Ill. 2011); *In re Victorio*, 2011 WL 2746054 (Bankr. S.D. Cal. July 8, 2011); *In re Fenn,* 428 B.R. 494 (Bankr. N.D. Ill. 2010); *In re Mendoza*, 2010 WL 736834 (Bankr. D. Colo. Jan. 21, 2010); *In re Blosser*, 2009 WL 1064455 (Bankr. E.D. Wis. Apr. 15, 2009); *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008).  For example, Judge Grossman of this Court held in *Orkwis* that a chapter 20 debtor cannot strip off an unsecured mortgage lien, noting, as many other courts have, that the amendments set forth in

BAPCPA, particularly in §§ 1325(a)(5) and 1328(f), were created with the intention of preventing lien stripping in chapter 20 cases. *Orkwis*, 457 B.R. at 251, citing *In re Geradin*, 447 B.R. 342, (Bankr. S.D. Fla. 2011) ("[T]here is no doubt that Congress fully intended for lien strips, whether strip-downs or strip-offs, to be dealt with under § 1325(a)(5).").

However, a number of other courts, including the Eighth Circuit Bankruptcy Appellate Panel, have reached the opposite conclusion, holding that a chapter 13 debtor who is not eligible to receive a discharge may nonetheless strip off a wholly unsecured mortgage lien, and that the lien is removed upon completion of the plan payments in the chapter 13 case, regardless of whether the debtor receives or is entitled to receive a discharge. *In re Fisette*, 455 B.R. 177 (B.A.P. 8th Cir. 2011); *In re Scotto-Diclemente,* 2011 WL 5835653 (Bankr. D.N.J. Nov. 18, 2011); *In re Gloster,* 2011 WL 5114833 (Bankr. D.N.J. Oct. 13, 2011); *In re Sadowski,* 2011 WL 4572005 (Bankr. D. Conn. Sept. 30, 2011); *In re Jennings*, 454 B.R. 252 (Bankr. N.D. Ga. 2011); *In re Okosisi*, 451 B.R. 90 (Bankr. D. Nev. 2011); *In re Fair*, 450 B.R. 853 (E.D. Wis. 2011); *In re Waterman*, 447 B.R. 324 (Bankr. D. Colo. 2011); *In re Davis*, 2011 WL 1237638 (Bankr. D. Md. Mar. 30, 2011); *In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010); *In re Tran*, 431 B.R. 230 (Bankr. N.D. Cal. 2010).

Among these latter cases are decisions noting that the Bankruptcy Code as written in 1978, and amendments made thereafter, including those promulgated under BAPCPA, does not specifically prohibit stripping off unsecured mortgage liens for a debtor who is ineligible to receive a discharge, even though such language could easily have been added. *See Goster*, 2011 WL 5114833, at *4 (Bankr. D.N.J. Oct. 13, 2011) ("Given the wide-ranging changes effected by BAPCPA, and its emphasis on ensuring that abusive use of bankruptcy protections not be

permitted, it is significant that no changes were made to the Bankruptcy Code to disallow strip-off of liens in Chapter 20 cases.").

*Statutory and case law analysis*

Thus, in light of the case law as it stands, resolution of the issue of strip offs in chapter 20 cases requires an examination of §§ 506(a), 506(d), 1322(b)(2), 1325 and 1328 as they now stand. As the Supreme Court has often stated, "The task of resolving the dispute over the meaning of [a provision of the Bankruptcy Code] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241 (1989). *See also Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.") (quotations omitted).[7]  This Court will apply the plain meaning of the applicable Bankruptcy Code sections, unless applying the plain meaning would yield an absurd result.

First are §§ 506(a) and (d).  As noted in *Nobelman*, a judicial valuation of the collateral under § 506(a) to determine the status of the mortgage debt holder's secured claim is permissible for purposes of considering a chapter 13 plan.  Under §506(d), "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void," subject to stated exceptions not applicable here.  Under § 1325(a)(5)(B)(i)(I), as amended by BAPCPA, if a holder of an "allowed secured claim" has not accepted the plan, the plan must provide:

---

[7]   *Accord Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (citations and quotations omitted); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms.") (citations and quotations omitted).

>    (I) the holder of such claim retain the lien securing such claim until the earlier of –
>    (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>    (bb) discharge under section 1328.

11 U.S.C. § 1325(a)(5)(B)(i)(I).  As noted above, under § 1322(b)(2), a plan may "modify the

rights of holders of secured claims, other than a claim secured only by a security interest in real

property that is the debtor's principal residence . . . ."

   Under *Pond* and the decisions of numerous other circuit and appellate courts, however, a

mortgage debt claim for which there is no collateral value is not a secured claim entitled to

protection of the anti-modification provisions of § 1322(b)(2);  therefore, under the plain

language of §1325(a)(5), such a lien claim is not "an allowed secured claim" entitled to the plan

treatment required by § 1325(a)(5), because the mortgage debt claim is not allowed as a secured

claim. This reading of § 1325(a)(5) regarding what is meant by "allowed secured claim" is also

consistent with the construction given by the Eighth Circuit to a similar provision of chapter 12

of the Bankruptcy Code.  The court in *Harmon v. United States* examined the phrase "allowed

secured claim" in § 1225(a)(5), which is language identical to § 1325(a)(5), and "conclud[ed]

that 'allowed secured claim' in § 1225(a)(5) must be interpreted by reference to the bifurcation

of claims into secured and unsecured claims by § 506(a)." *Harmon,* 101 F.3d 574, 583 (8th Cir.

1996).

   Treating a wholly unsecured lien claim as an allowed unsecured claim is not a voiding of

the lien under § 506(d); this is simply applying the valuation permitted by § 506(a).  If wholly

unsecured, the mortgage debt claim would not need to be treated as a secured claim under

§§ 1322(b)(2) and 1325(a)(5), but would need to be treated as an unsecured claim in accordance

with § 1325(b)(1).  As an unsecured claim, the mortgage lien would not remain in place until

discharge under § 1325(a)(5)(B)(i)(I), because the unsecured claim is not a secured claim for

purposes of confirmation of the debtor's chapter 13 plan, and, therefore, § 1325(a)(5) is not implicated. *In re Frazier*, 448 B.R. 803, 811 (Bankr. E.D. Cal. 2011) ("A creditor entitled to assert the provisions of 11 U.S.C. § 1325(a)(5) must be the holder of an "allowed secured claim." A "secured claim" is a term of art under the Bankruptcy Code . . . and is the secured claim determined pursuant to § 506(a).").

The court in *Hill* having concluded that the requirements under § 1325(a)(5) only apply when there is value in the collateral after applying § 506(a) to the lienholder's claim, stated that the holder of the unsecured mortgage claim as to which the debtor has been discharged of *in personam* liability would nonetheless be entitled to be treated the same as any other nonpriority unsecured claimholders, and allowed the unsecured lien to be stripped off upon completion of the plan payments. 440 B.R. 176, 182-83 (Bankr. S.C. Cal. 2010); *see In re Fisette*, 455 B.R. at 186 ("As we explained, *Nobelman* instructs us to first look to § 506(a) to classify the claim as secured or unsecured."); *In re Okosisi*, 451 B.R. 90, 98 n.8 (Bankr. D. Nev. 2011).

This treatment of an unsecured mortgage debt as an unsecured claim, even though the debtor has no personal liability, is consistent with the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), which held that a mortgage lien for which the debtor no longer has personal liability as the result of a chapter 7 discharge is a claim as defined under the Bankruptcy Code, and is a claim which may be treated in a chapter 13 plan. *Johnson*, however, did not reach the issue of the specific treatment required for such a claim.

*Effect of a debtor's ineligibility to receive a discharge*

Debtors Miller and Paulette each conceded they are not entitled to a discharge under

§ 1328(f), which now provides:

> (f) the court shall not grant a discharge of all debts provided for in the plan . . . if the debtor has received a discharge –
>
> (1) in a case filed under chapter 7 . . . during the 4-year period preceding the date of the order for relief.

11 U.S.C. § 1328(f)(1).   Debtors Miller and Paulette each received their chapter 7

discharge approximately two years before commencing their current cases.

The next question, then, is whether §§ 506(a), 1322(b)(2) and 1325(a)(5) have different

meanings for a debtor who is eligible for a discharge versus a debtor who is not.  Section 1328

does not provide that the court may not confirm a plan for a debtor who is not eligible to receive

a discharge; in fact, neither § 1325 nor any other provisions of chapter 13 provides that a plan

may only be confirmed for a debtor who is eligible to receive a discharge.  Because the

Bankruptcy Code does not expressly make this distinction, this Court, therefore, concludes that a

chapter 13 debtor may strip off a wholly unsecured mortgage lien and treat the claim as

unsecured under a plan, whether or not such a debtor is eligible to receive a discharge.

"[N]othing in § 506, § 1322, or any other section of the Bankruptcy Code provides that a chapter

13 debtor's right to modify or strip off liens is conditioned on the debtor being eligible for a

discharge."  *Gloster*, 2011 WL 5114833, at *5, citing *In re Fissette,* 455 B.R. 177, (B.A.P 8th

Cir. 2011).

This analysis would seemingly apply equally to a chapter 13 debtor who is ineligible to

receive a discharge for reasons other than the timing mechanics of § 1328(f).  For example,

under § 1328(g), a discharge may not be granted to a debtor who does not complete a post-

petition personal financial management course as described under § 111.  This course, in accordance with Rule 1007(c), must be completed and the statement of completion filed "no earlier than the date of the last payment made under the plan or the date of the filing of the motion for a discharge under . . . § 1328(b) . . . ."  FED. R. BANKR. P. 1007(c).  A bankruptcy court cannot know at the time of plan confirmation whether the debtor will file such a statement; yet, a debtor who does not comply "shall not" be granted a discharge under § 1328(g)(1), the same as a debtor "shall not" be granted a discharge under § 1328(f) based upon having received a prior discharge with the proscribed periods.  Further, under § 1328(h), a discharge may not be granted to a debtor due to applicability of § 522(q)(1) or the pendency of an action in which the debtor may be found guilty of certain felonious conduct or liable for certain debts described in § 522(q)(1)(B).

In short, Congress did not prohibit a debtor who is eligible to commence a chapter 13 case under § 109(e) but is ineligible to receive a discharge from availing themselves of confirming a plan and obtaining the benefits thereof by fulfilling the requirements of chapter 13.

*How does a chapter 13 case end without a discharge?*

Certain of the cases discussed in this opinion address the issue of what is the end result of a case in which a debtor completes her payment obligations under a confirmed plan, but does not receive a discharge; is such a case closed or dismissed?  This distinction is significant, *inter alia*, because of the provisions of § 349, which addresses the effect of dismissal of a case on orders entered during the case.

First, cases are generally uniform that closing and dismissal have different meanings under the Bankruptcy Code and Rules, and that closing a case is distinct from dismissing a case. *See In re Olejnik*, 2010 WL 4366183 (Bankr. E.D.N.Y. Oct. 28, 2010); *In re Parklex Assoc.*,

Inc., 435 B.R. 195 (Bankr. S.D.N.Y. 2010); *In re Aztec Supply Corp.,* 399 B.R. 480 (Bankr. N.D.

Ill. 2009); *In re Forletta*, 397 B.R. 242 (Bankr. E.D.N.Y. 2008); *In re Raggie*, 389 B.R. 309

(Bankr. E.D.N.Y. 2008); *In re Kaplun*, 2006 WL 4455778 (Bankr. E.D.N.Y. Aug. 23, 2006). As

stated in *In re Chaudhry*, 411 B.R. 282, 283 (Bankr. E.D. Va. 2009):

> There is a difference between dismissing and closing a case [in applying 11
> U.S.C. §§ 349 and 350]. If a case is dismissed, the case is not fully administered.
> Actions taken may be undone. Avoided transfers are reinstated, liens avoided
> under § 506(d) are reinstated and certain orders entered in the case are vacated.
> Property of the estate is revested in the entity in which the property was vested
> immediately before the commencement of the case. None of this occurs if a case
> is closed. A case is closed after the estate is fully administered. Avoided transfers
> and liens remain avoided. Property of the estate that was transferred remains
> transferred.

Section 350(a) directs that a case shall be closed "after an estate is fully administered and

the court has discharged the trustee." 11 U.S.C. § 350(a). Section 103(a) generally provides that

the provisions of chapter 3 shall apply to cases under chapters 7, 11, 12 and 13. Rule 5009

provides that in a chapter 7, 12, or 13 case, if the case trustee has filed a final report and final

account and has certified that the estate has been fully administered, a presumption arises thirty

days thereafter that the estate has been fully administered. FED. R. BANKR. P. 5009. As noted,

once fully administered, the case is closed pursuant to § 350(a), not dismissed. FED. R. BANKR.

P. 5009; *see Olejnik* 2010 WL 4366183, at *3; *Gloster*, 2011 WL 5114833, at *5, citing *Fissette,*

455 B.R. at 185. Rule 4006 provides that an order may be entered in an individual case "closing

the case without the entry of a discharge." FED. R. BANKR. P. 4006. Even a debtor who is

eligible for a chapter 13 discharge but does not get one if she completes her plan payments but

does not make the certification required by § 1328(g) would have to have her case closed or

dismissed; it may not remain dormant. From this Court's perspective, because the estate would

have been fully administered, that case would be closed.

Some cases in this chapter 13 lien strip off area note that if a case is dismissed then, under § 349, any lien voided under § 506(d) shall be reinstated. *See Chism v. Bank of America*, 2011 WL 4983003 (Bankr. N.D. Ill., Oct. 14, 2011); *In re Victorio*, 454 B.R. 759 (Bankr. S.D. Cal. 2011); *In re Lukaszewski*, 414 B.R. 15 (Bankr. D. Conn. 2009); *In re Chaudhry*, 411 B.R. 282 (Bankr. E.D. Va. 2009); *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008); *In re Jordan*, 2008 WL 1743855 (Bankr. D. Kan. Apr. 11, 2008); *In re Waters*, 276 B.R. 879 (Bankr. N.D. Ill. 2002).  However, § 349 is not applicable to lien stripping under § 506(a) where a debtor completes plan payments because that case will be closed, not dismissed. Further, while § 349(b)(1)(C) does provide for the reinstatement of a lien voided under § 506(d) if a case is dismissed, a stripped off lien is not voided under § 506(d), but is classified under § 506(a) as unsecured.

Thus, if Congress intended to prevent lien stripping in chapter 20 cases, it could have added a chapter 13 provision that a debtor who is not eligible to receive a discharge under § 1328(f) may not confirm a plan, or could have provided that a chapter 13 case that does not result in a discharge should be dismissed or converted, or exempted principal residential mortgages from § 506(a) valuation as it exempted such secured claims from modification under § 1322(b)(2).  Further, in light of *Dewsnup* (discussed *infra*), Congress could have extended § 349(b)(1)(C) to all liens voided or valued under § 506, and not limited § 349(b)(1)(C) to liens voided under § 506(d).  This was not done.

Therefore, only upon the completion of the plan payments may a debtor strip off an inferior wholly unsecured mortgage lien after satisfying the requirements of §§ 1325(a)(4) and 1325(b)(1).  However, this decision should not be read to say that confirmation is always

achievable; the debtor must still meet each of the other applicable provisions of § 1325 and chapter 13 to obtain confirmation of his or her plan.

*Mechanics of lien stripping*

This Court agrees with *Orkwis*, that the proper mechanic to value the mortgage lien under § 506(a) in chapter 13 cases is to bring a motion pursuant to Rules 3012, 9013, and 9014. FED. R. BANKR. P. 3012, 9013, 9014. *Orkwis*, 457 B.R. at 245. Rule 3012 states that "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct." Rule 9013 states the requirements for form and service of motions in contested matters. Rule 9014 governs contested matters. FED. R. BANKR. P. 3012, 9013, 9014. An adversary proceeding is not required.

*Why this is not Dewsnup*

In *Dewsnup v. Timm*, 502 U.S. 410 (1992), the United States Supreme Court held that a chapter 7 debtor may not strip down a mortgage lien to the fair market value thereof. Most courts, to analyze the corollary question of whether a chapter 7 debtor may strip off a wholly unsecured mortgage lien, have agreed a chapter 7 debtor may not do so.[8]

In the chapter 7 arena, most courts refer to the Supreme Court's discussion in *Dewsnup* of how §§ 506(a) and (d) are to be interpreted:

> Therefore, we hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take

---

[8] This Court is aware that two decisions of this Court are not in accord with the majority of cases. *In re Smoot*, 2011 WL 5240365, at *5 (Bankr. E.D.N.Y. Nov. 1 2011) ("[T]his Court looks to the Second Circuit decision in *Pond* and finds that the effect of a discharge on a creditor whose wholly unsecured mortgage lien is "stripped off" should not be different whether the debtor files a chapter 7 or chapter 13."); *In re Lavell*, 2009 WL 4043089, at *5-6 (Bankr. E.D.N.Y. Nov. 19, 2009).

> the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text,
> we are not convinced that Congress intended to depart from the pre-Code rule that
> liens pass through bankruptcy unaffected.[9]

502 U.S. at 417. *See In re Caliguri*, 431 B.R. 324, 327 (Bankr. E.D.N.Y. 2010).  Most courts

have made a distinction between stripping off by debtors in chapter 13 versus debtors in chapter

7, in part, because valuations under § 506(a) may not be made in a vacuum; valuation under

506(a) must be "in light of the purpose of the valuation and of the proposed disposition or use of

the property."  A valuation for purposes of confirming a chapter 13 plan is a proper invocation of

§ 506(a); to this Court, a valuation solely to strip off the inferior lien in a chapter 7 case is not.

## <u>Conclusion</u>

The Debtors here rely on *Pond* for the proposition that because the junior lien is

wholly unsecured under § 506(a), the anti-modification prohibition of § 1322(b)(2) does

not apply, and the treatment provisions of § 1325(a)(5) applicable to secured claims do not

apply.  This Court agrees.

As set forth above, the strip off of wholly unsecured mortgage debt is permissible under a

chapter 13 plan for a debtor who is ineligible to obtain a discharge, and will be effective when

payments required pursuant to § 1322(b)(1) and otherwise under the plan are completed.  In

terms of the treatment of the wholly unsecured mortgage debt in the plans, the claims will be

---

[9] Some have criticized the Supreme Court's majority opinion in *Dewsnup* for differentiating the meaning to be given
to "allowed secured claim" in section 506(a) versus 506(d), including Justice Scalia who stated in his dissent:

> With exceptions not pertinent here, § 506(d) of the Bankruptcy Code provides: "To the extent that
> a lien secures a claim against the debtor that is not an allowed secured claim, such lien is
> void . . . ." Read naturally and in accordance with other provisions of the statute, this
> automatically voids a lien to the extent the claim it secures is not both an "allowed claim" and a
> "secured claim" under the Code. In holding otherwise, the Court replaces what Congress said with
> what it thinks Congress ought to have said-and in the process disregards, and hence impairs for
> future use, well-established principles of statutory construction.

502 U.S. at 420. However, this Court does not write on a clean slate in this area, and is bound by the high Court's
holding and analysis of section 506 in *Dewsnup*.

classified as unsecured for plan confirmation purposes.  As unsecured claimholders, BOA and

Citibank are entitled to have their claims treated like claims of other nonpriority unsecured

claimholders in the respective bankruptcy cases.  Therefore, BOA and Citibank are entitled to a

pro rata share of the distributions made to other unsecured creditors.

Accordingly, the Miller Motion and the Paulette Motion should be granted, the plans of

Miller and Paulette should be confirmed, and the wholly unsecured mortgage liens owned by

BOA and Citibank, respectively, will be avoided upon the certification by the chapter 13 trustee

of completed plan payments in the respective cases.

Orders consistent with this Memorandum Opinion shall be issued.



Dated: December 15, 2011
       Central Islip, New York

_____
                              **Alan S. Trust**
            **United States Bankruptcy Judge**